# Dickinson *versus* Dickinson.

1. One not a subcribing witness to a will, having testified to no facts indicating incapacity of a testator, is not competent to give his opinion as to want of capacity.

2. Such a witness having testified as to facts within his own knowledge tending to show want of capacity may add his own opinion.

3. An election *in pais* to take under a will, should be clear and positive to estop a party from making it in a regular and proper form *at law*.

4. A testatrix left a husband and eight children. In an issue *devisavit vel non*, the husband having elected to take against the will was not competent to testify in favor of the will, his interest under a testacy being one-third by the Act of May 1st 1855, and under an intestacy, one-ninth by the Act of April 11th 1848.

5. The Act of 1855 does not repeal the Act of 1848 in respect to the husband's share.

6. To make one act a repeal of another by implication, they must be so clearly repugnant that they cannot stand together.

7. The provision of the 7th section of the Act of 1848, that a husband shall not be a subscribing witness to his wife's will, is a provision for the proof of the instrument, not a prohibition against his presence at the execution which is no part of the proof.

8. When the proof is consistent with the testator's knowledge of the contents of the will, the natural presumption is that he knew them.

9. The presumption is that a person signing any instrument and asking others to attest it, has taken care to understand its contents.

March 22d 1869. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Clearfield county*: No. 249, to January Term 1865.

This was an issue *devisavit vel non*, directed, September 28th 1864, by the Register's Court to try the validity of the will of

11 P. F. SMITH—26

[Dickinson *v.* Dickinson.]

Julia Dickinson, deceased. John Dickinson, a son, the principal legatee and executor, was the plaintiff, and Abel S. Dickinson, another son, the defendant. The decedent was the wife of Abel Dickinson; on the 24th of December 1863 she executed the paper writing in controversy. It was witnessed by G. W. Caldwell and E. A. Wright. She bequeathed to her husband the interest of her estate for life,. and at his death to her son John $3500, to her son William $500, and to her son Abel S. $500.

On the trial before Linn, P. J., the subscribing witnesses were called and proved the execution of the will; they testified that in their opinion the testatrix had capacity to make a will. Dr. Caldwell, one of the witnesses, testified further that the will was executed about two or three weeks after she had been attacked with paralysis; the will was not read to her in his presence; she died five or six days after its execution. She told witness that she had had the will prepared, she intended to write it herself, but was prevented by sickness in the house of a son with whom she was living, which required her to give so much attention to the house that she was unable to write it. Said her husband drew the will at her request. He was present at its execution. She did not speak of the contents of the will. The other witness testified to substantially the same facts.

The defendant then gave evidence tending to prove the incapacity of the decedent.

Henrietta Stroup testified, that she was with the decedent the night after she was taken sick; the decedent was restless and lamented her illness; witness thought there was a great change in her disposition; she could not get fixed to find any relief, talked to herself a great deal, "would talk about her son and others, and then in the same conversation turn around and just talk the other way."

The defendant proposed to ask the witness: "whether, from the facts observed by her and now testified to by her, she believes Mrs. Dickinson to have then been, or not been, in a condition of mind fit for testamentary disposition?" And also "whether during her residence in the winter of 1862 and 1863, with Mrs. Julia Dickinson, she observed acts and language on her part that indicated to the mind of witness a condition of lunacy, and to detail those acts and that language, as far as she can remember."

The court rejected the offers so far as concerns any expression of opinion by the witness of the state of mind of testatrix; but allowed her to detail the acts and state the language used. Defendant excepted, and a bill.of exceptions was sealed.

Abel Dickinson, the husband, was called by the plaintiff, the witness having filed in court his election not to take under the will. The defendant objected to his admissibility on the ground of interest, and offered the receipt of witness dated December 31st

1864 to A. S. Dickinson "for $100 interest on note of Mrs. Julia Dickinson." The court admitted the witness and sealed a bill of exceptions. He testified that the decedent had wanted a will in her own handwriting, told him to write one, stated how she would dispose of her property, gave her reasons for making distinctions amongst her eight children; after the will had been drawn, she read it and objected to the word "beloved," connected with her son John; another will was written omitting that word, the will first drawn was like that in controversy except the one word.

The defendant submitted several points; the only one important to notice was the 4th, viz. :—

"The testatrix being a *feme covert*, was, in contemplation of law, under the control of her husband, and the only testimony in the cause as to direction for testamentary disposition being that of the husband, and he being the scrivener employed, and he alone testifying as to the reading of the will by the testatrix, there is no such evidence in the cause as sustains the will; the presumption of law that it was made by direction and under the control of her husband is in full force, and the verdict must be for the defendant."

To this the court answered :—

"We cannot give you the instructions asked for in the defendant's 4th point. Since the passage of the Act of 1848, 'any married woman may dispose, by her last will and testament, of her separate property, real, personal and mixed, whether the same accrue to her before or during coverture.' It is true that the act provides that such will 'shall be executed in the presence of two or more witnesses, neither of whom shall be her husband,' but by this we understand no more than that her husband shall not be a witness to establish the will. His presence at its execution does not, in our opinion, render it invalid, nor is there anything in the letter or the spirit of the law that forbids a husband to act as a scrivener in preparing a will for his wife. In this case the will is witnessed by two competent witnesses, neither of whom is the husband of the testatrix, and although the husband seems to have been present, he was not there in the capacity of a witness, nor asked to act as such.

"On the contrary, it seems that the subscribing witnesses were persons other than the husband, who were called in by the special request of the testatrix. Prior to the Act of 1848 a married woman could not make a will, *because she was presumed to be under the control and coercion of her husband*, and it seems to us that when the statute removed the disability it uprooted the presumption upon which it was founded. There is, therefore, now no legal presumption that the wife in executing her will is acting

[Dickinson *v.* Dickinson.]

under the control or coercion of the husband, nor does such presumption arise from his presence at the execution of the paper.

"Undue influence must, therefore, be established in this just as in any other case. It may be that owing to the close relations of the parties a less degree of influence or control would be sufficient to invalidate a will for alleged undue influence by the husband than in other cases, but the broad proposition here stated is that 'the presumption of law that it was made by direction of and under the control of the husband is in full force.' To this we cannot assent, and therefore decline to give you the instructions asked for."

The verdict was for the plaintiff. The defendant took out a writ of error.

He assigned for error the rulings of the court on the questions of evidence and the answer to his 4th point.

*W. A. Wallace,* for the plaintiff in error.—May a non-subscribing witness who testifies to facts within his knowledge, give his opinion as to capacity? Rambler *v.* Tryon, 7 S. & R. 90; Wogan *v.* Small, 11 Id. 141; 1 Redfield on Wills 141, 142. As to election by the husband, his acceptance under the will was an election: Bradfords *v.* Kents, 7 Wright 474. He was interested, because if the will was established he would take a third of the estate, by electing against it; if the decedent was intestate he would take but one-ninth: Acts of April 11th 1848, § 9, Pamph. L. 537, Purd. 700, pl. 14; May 4th 1855, § 1, Pamph. L. 430, Purd. 1018, pl. 21. As to the husband being present at the execution of the will: Act of 1848, § 7, Purd. 740, pl. 12; Fransen's Will, 2 Casey 204; Hess's Appeal, 7 Wright 75; Vernon *v.* Kirk, 6 Casey 218; Barr *v.* Graybill, 1 Harris 396.

*J. B. McEnally,* for defendant in error.—That the will was not read at the execution is of no importance: Hoshauer *v.* Hoshauer, 2 Casey 404. One not a subscribing witness cannot give an opinion as to capacity: Logan *v.* McGinnis, 2 Jones 31. As to election, 12 Casey 476.

The opinion of the court was delivered, May 12th 1869, by

AGNEW, J.—The first two assignments of error are not sustained. Henrietta Stroup, the witness, had not testified to facts fairly indicative of mental incapacity, and therefore no sufficient ground was laid to make her opinion competent evidence.

The decisions in this state certainly are, however, as claimed by the plaintiff in error, that when a witness, not a subscribing witness to the will, has testified to facts of his own knowledge tending to show want of testamentary capacity, he may be permitted to add his own opinion. To the cases cited by the plaintiff

[Dickinson v. Dickinson.]

in error (Rambler v. Tryon, 7 S. & R. 90, and Wogan v. Small, 11 S. & R. 141), may be added Wilkinson v. Pearson, 11 Harris 117; Bricker v. Lightner, 4 Wright 199; Dean v. Fuller, Id. 478, and Titlow v. Titlow, 4 P. F. Smith 216. See also Redfield on Wills 140, 141, 142; 1 Greenlf. Ev. § 440, note 6.

The second error must be sustained, though not on the ground most urged. The proof of the election of Abel Dickinson, the husband of the testatrix, to claim against his wife's will was not sustained. His receipt to A. B. Dickinson for $150, interest on the note of the latter to Mrs. Julia Dickinson, does not express the character in which he received the money, and there was no other proof. The receipt left the question of election in doubt. In fact Abel Dickinson had no right to receive the interest in any capacity. It was a mispayment; as the executor or administrator of Mrs. Dickinson only could legally receive it. An election in pais to take under a will, whether of husband or wife, should be clear and positive to prevent or estop a party from making it in a regular and proper form at law: Anderson's Appeal, 12 Casey 476.

The second ground of objection to Abel Dickinson's competency is more tenable. The question trying was the testamentary capacity of Julia Dickinson. If she possessed it, she died testate; if she did not, she died intestate. If testate her husband could elect under the 1st section of the Act of 4th May 1855, to take such share and interest in her real and personal estate as she could when surviving elect to take against his will in his estates. This would be one-third of the personalty absolutely. But if she died intestate, then, under the 9th section of the Act of 11th April 1848, he would be entitled to an equal share with her children; in this case one-ninth of her personalty. It is clear it was the interest of Abel Dickinson to establish the will, as his election against it would thus give him one-third of her estate, while intestacy would give him but a ninth. But it is objected that the Act of 1855 has repealed that of 1848 in this respect. It does not expressly, and to do it impliedly it must be clearly repugnant, so that they cannot stand together. The 7th section of the Act of 1848 conferred the power upon a married woman to dispose of her separate estate by last will and testament. It was only on her failure to do so the 9th section distributed her estate in certain proportions among her children and her husband as the consequence of intestacy. But when she exercised the power of a testatrix, she could do it as absolutely as any other person, and therefore could will away from her husband as well as from her children. It was to correct this supposed excess of power and place her on a level with her husband, the Act of 1855 enacted— " that the power of any married woman to bequeath or devise her property by will shall be restricted as regards the husband to the

[Dickinson *v.* Dickinson.]

same extent as the husband's power so to dispose of his property, is restricted as regards the wife, namely," &c.   But this neither expressly nor impliedly repealed the 9th section of the Act of 1848, providing for a married woman's intestacy only.   The former relates to the husband's rights where there is a will, which before could deprive him of all right to her property; and the latter ascertains the mutual rights of husband and children where there is no will.   If there be no children the personal estate is given altogether to the husband.   Her acts, therefore, relate to different subjects and are not repugnant.   Abel Dickinson's interest was to establish the will, his election giving him a greater share in her estate, and it was therefore error to admit him to testify.

The last assignment of error does not raise, except perhaps incidentally, the question most pressed in the argument, to wit: that the husband's presence at the attestation of the will vitiates it.   The court charged directly that his presence did not render the will invalid.   We cannot say this was error.   The legislature certainly intended that the husband should take no part in the proof of his wife's will.   The 7th section of the Act of 1848 reads thus: "Any married woman may dispose by her last will and testament of her separate property, real, personal or mixed, whether the same accrues to her before or during coverture.   Provided that said last will and testament be executed in the presence of two or more witnesses, neither of whom shall be her husband." This is a provision for the proof of the instrument, and not a prohibition of a matter constituting no part of the proof.   It is proper that the proof of the will should come from a disinterested source, and therefore the husband should not participate in the proof; but there is no prohibition against his presence when the attestation takes place.   It is scarcely possible if the legislature intended a prohibition they would not have said so.   Every one, clerk or layman, knows that a separate acknowledgment of a wife apart from her husband is necessary to make her deed valid. Knowing this it is singular the legislature did not prohibit the husband's presence if a similar ceremony was intended to take place before the subscribing witnesses.   If the influence of the husband be a ground for excluding the husband's presence at the attestation of the will, much greater is the reason that it should appear that his influence had nothing to do with the formation of the will, by requiring a ceremony similar to the separate acknowledgment of a wife's deed, when she could freely say that her will was made of her own accord and without influence or compulsion. It is the undue influence in making the will which is most to be feared, and not that which might arise from the husband's presence at its execution.   There being no prohibition of any kind except against actual witnessing by the husband, we cannot say that the

[Dickinson v. Dickinson.]

will is rendered invalid by the husband's presence. To do so, would be rather to legislate than to interpret.

The precise question involved in the point already referred to was, that Julia Dickinson's actual knowledge of the contents of her will was proved only by her husband, and therefore that there was a failure to prove due execution of the will. But the question of due execution depended on the testimony of the subscribing witnesses. It is true, they do not testify that the will was read to her in their presence, or that she knew the contents. But they testified to facts implying no want of knowledge on her part—she spoke of facts concerning the drawing of her will, and referred to the paper before them as her will in such a manner as to leave the opposite impression, that she did know its contents. To adopt the rule that subscribing witnesses must hear the will read, or know that the contents have been made known to the testator, would embarrass the proof of wills. If facts are proved showing that a testator does not know the contents of the paper he subscribes as his will, it is a different thing; but if the proof is consistent with knowledge we must allow something for the natural presumption that no one will do so important an act without knowledge. As remarked by Lowrie, J., in Hoshauer v. Hoshauer, 2 Casey 406, "We must admit the presumptions that arise from the ordinary course of doing such business; and one of them is, that a person signing any instrument and asking persons to attest it, has taken care to understand its contents." There being in the present case no proof to negative Mrs. Dickinson's knowledge of the contents of the paper, the affirmative proof of knowledge by her husband was not necessary to help out the proof of due execution; and the court could not, therefore, as a matter of law, charge as requested in the point that the proof of execution of the will was insufficient.

Judgment reversed, and a *venire facias de novo* awarded.

THOMPSON, C. J., dissented.