## Blume *versus* Hartman.

1. The action of the court below, in giving the conclusion of the argument to counsel for one side or the other, is not reviewable in error.

2. Where a will has been written by a stranger who is by its terms the principal beneficiary, the burthen of proving that the testator was acquainted with its contents, and had an intelligent consciousness of the proportions of the whole to be taken by the beneficiary, rests upon him; but where, as in this case, the will was written by the son of the testator, who was the principal beneficiary, the burthen of disposing these allegations rests upon the contestant.

3. Where a will has been written by a son of the testator, who is, by its terms, the principal beneficiary, the burthen of proving that the testator was not acquainted with its contents, and had not an intelligent consciousness of the proportion of the estate to be taken by the beneficiary, rests upon the contestant; but if the jury believe from the testimony, that the will was not read to the testator, nor by him, nor explained to him before its execution, nor read by him afterwards before his death, the burthen of showing that the will was drawn as directed by the testator, is on the beneficiary.

November 12th, 1886.   Before GORDON, PAXSON, TRUN-KEY, GREEN and CLARK, JJ.   MERCUR, C. J., and STERRETT, J., absent.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county:*   Of October Term 1886, No. 233.

This was an issue wherein Frederick Blume was plaintiff and Amanda Virginia Hartman, Theodore W. Hartman her husband, George W. McClure administrator of Charlotte Matilda McClure, deceased, and Emmett McClure, guardian of Charlotte Blume McClure, George Miller McClure and Mary McClure were defendants.

The Orphans' Court of Allegheny county directed its precept with the will of Charlotte Blume annexed to the Court of Common Pleas of Allegheny county commanding an issue to be formed to try the following issue of fact, to-wit.: First, whether there was undue influence, fraud or imposition used to procure the execution of said paper writing; and, second, whether the said Charlotte Blume had a full understanding of the nature of the dispositions contained in the said paper.

The plaintiff filed a formal declaration and the defendants filed a formal plea.

The following are the material facts of the case as they appeared on the trial before STOWE, P. J.

On the 7th of February, 1886, Charlotte Blume died testate. Four days after her will was admitted to probate, when it ap-

peared that her estate was disposed of as follows: about $170,000 to her son Frederick Blume, about $29,000 to her daughter Mrs. McClure, and about $28,000 to her daughter Mrs. Hartman, with remainder to Frederick Blume if they died without issue.

The will had been executed in presence of two witnesses on the 24th of December, 1885. It had been written by her son Frederick Blume. There was evidence tending to show that the will was not read by her or read or explained to her before its execution or that it was read by her after its execution. It was taken shortly after its execution by Frederick Blume and retained by him until it was offered for probate. There was evidence that Mrs. Blume had at times expressed her intention of making an equal distribution of her property among her children. Frederick Blume testified that he had drawn the will as directed; that he had made and exhibited to her a schedule of the stocks and property bequeathed to each; that after preparing the will he gave it to her while he went after witnesses and after its execution it was for a time left with her.

One of her daughters and her nurse were with her during part of this time, and they testify that she did not read the will while either of them were there.

When the evidence was closed the plaintiffs' counsel maintained that they had the right to close the argument to the jury, the defendants' counsel denied this. The court held that the burthen of proof was on the defendants and that they had the right to close the argument. (First assignment of error.)

The court instructed the jury, inter alia, in the general charge:

Now if Mrs. Blume was in such a feeble condition mentally from her physical weakness as to be easily influenced—while she may have been, and I have no doubt was entirely conscious of what was going on, as to make it easy to perpetrate a fraud upon her, (and do not understand me as indicating an opinion that she was not entirely competent to have it explained to her fully at that time,) yet if she was so weak as to be physically unable to read the will, and it was in fact not read by her nor explained to her, then the burden of proof is on the plaintiff to show affirmatively that the will is in accordance with the instructions of his mother. (Second assignment of error.)

" . . . . . If you find in favor of the defendants the facts as alleged by them—the fact of the mental weakness of Mrs. Blume from physical prostration at that time; that the will was neither explained nor read to her, nor did she read it from the time Frederick wrote it until her death; that she had for a considerable time previous and up to, near, and about the

[Blume v. Hartman.]

time of making her will an expressed fixed intention of dividing her property equally among her children; taken in connection with the admitted fact that Frederick wrote the will, and the proof that he alone consulted her about it—also in connection with the great advantage given to Frederick by it—if you find all these things in favor of the defendants, then it creates a series of circumstances and facts that throws the burden on the plaintiff to show that the will was in accordance with his mother's instructions and was not procured to be made in the manner it was by fraud and trickery. The mental weakness alone would not shift the burden."

The plaintiff presented, *inter alia*, the following points.—1. The court is requested to charge the jury that the first issue presented by the record for trial is whether the will executed by Charlotte Blume on December 24th, 1885, was executed under or by means of fraud or undue influence on the part of Frederick Blume, the plaintiff; that there is no evidence in the case that would justify the jury in so finding, and that their verdict under the first count of the declaration should be for the plaintiff.

To this point the court replied: This point is refused. (Third assignment of error.)

2. The court is requested to charge the jury that the second issue presented for trial is whether Charlotte Blume, the textatrix, signed the will on December 24, 1885, with a knowledge of its contents; that the evidence of both parties shows that said will was executed in due form, and that she so executed the same when possessed of testamentary capacity, that therefore the legal presumption is that she knew the contents of the will at the time she signed it, that the burthen of proof is on the defendants to rebut such presumptions and to show that she did not know the contents of said will; that there is no sufficient evidence in the case showing that said Charlotte Blume did not know the contents of said will at the time she signed the same, and that therefore the verdict of the jury should be for the plaintiff on the second count of the declaration."

To this point the court replied: This point is refused. (Fourth assignment of error.)

3. The court is requested to charge that the presumption of law is when the maker of a will possessed of mental power sufficient to make a will does execute a will in due form, that she does so without undue influence and with a knowledge of its contents, that the burthen of proof is then on those who allege that the will was executed under undue influence or without a knowledge of its contents; that in the present case the jury are bound to presume that Mrs. Blume possessed testa-

[Blume v. Hartman.]

mentary capacity, and that no sufficient evidence has been adduced to warrant the jury in finding the issues in favor of the defendants, and that their verdict should be for the plaintiff.

To this point the court replied: This point is refused. (Fifth assignment of error.)

4. The court is requested to charge that undue influence cannot be presumed, that it must be proved as a fact by evidence; that the evidence to warrant a jury in overturning a will duly executed by a person of sound mind, must either show fraud by making false representations or withholding facts that ought to have been disclosed, or coercion of the will of the testatrix by threats of violence, or the evidence must show that the textatrix signed the will in ignorance of its contents ; that in the present case there is no evidence that Frederick Blume deceived his mother by false representations or by withholding facts which he should have disclosed, nor does the evidence warrant the jury in judging that Charlotte Blume, when she signed the will on December 24th, 1885, did so in ignorance of its contents, and that the verdict of the jury should be for the plaintiff on both the issues presented by the plaintiff.

To this point the court replied: This point is refused. (Sixth assignment of error.)

Verdict for the defendants.

The plaintiff thereupon took this writ and filed the above assignments of error.

*George Shiras, Jr.* and *Thomas M. Marshall* (*J. S. Strickler* with them), for plaintiff in error.—If the learned judge was right in holding, after all the evidence was in, that the burthen was on the defendants, and hence that they had a right to close, how could he consistently charge the jury that if they found *some* of the facts as claimed by the defendants, the burthen was on the plaintiff? The plaintiff had produced a will duly executed and a judgment of the Register admitting the same to probate. The defendants had undertaken to show that the execution of the will had been procured by fraud and coercion, and that the textatrix was not informed of the contents of the will; and the court, in passing upon the question of the order of the argument, had ruled that the burthen was on the defendants. Why should the defendants not have been held to that view of the case? Such apparent inconsistency must have confused the jury.

" To invalidate a will on the ground of fraud and undue influence, it must be shown that they were practised with respect to the will itself, or so contemporaneously with the will, or connected with it, as by almost presumption to affect it.

[Blume *v.* Hartman.]

Other frauds committed against a testator are only evidence to raise a strong suspicion against any act done under the superintendence, or by the interference of those committing them:" Jones *v.* Goodrich, 5 Moo. P. C., 16; Miller *v.* Miller, 3 S. & R. 267; Comstock *v.* Hadlyme, 8 Conn., 254.

The influence to vitiate the act must be such as to amount to force and coercion destroying free agency, and there must be proof that the act was obtained by this coercion; Gardiner *v.* Gardiner, 34 N. Y., 586; Boyse *v.* Rossborough, 6 H. L., Cases, 247.

In Shailer *v*, Bumstead, 99 Mass. 112—the court said: To establish the charge of fraud and undue influence, two points must be sustained, first, the fact of the deception practised, or the influence exercised; and next, that this fraud and influence were effectual in producing the alleged result, misleading or overcoming the party in this particular act.

The Pennsylvania cases are fully in accord with those just cited: Eckert *v.* Flowry, 7 Wright, 46; Cauffman *v.* Long, 1 Norris, 72; McMahon *v.* Ryan, 8 Harris, 329; Thompson *v.* Kyner, 15 P. F. S., 368; Boyd *v.* Boyd, 16 Id., 283; Caldwell *v.* Anderson, 8 Out., 199.

*John Dalzell* and *A. M. Brown* (*S. Schoyer, Jr.* with them), for defendants in error. The burthen of proof remains with the contestants where the principal beneficiary is a blood relative and the drawer or adviser of the will, notwithstanding the proponent takes large advantages, and notwithstanding the mental weakness of the testator. But if there be circumstances of doubt and suspicion, *in addition*, the rule changes, and the burthen is shifted.

We need not cite the familiar authorities which apply to strangers. The discriminating cases, notably Caldwell *v.* Anderson, 8 Out., 205, lays down no different rule from that asserted by Judge EWING. No case can be cited in Pennsylvania or elsewhere, which retains the burthen of proof on the contestant, where other circumstances tending to show fraud, imposition, undue influence, or want of full understanding of the dispositions of the will proper to submit to a jury existed. Had such circumstances as appear in the case at bar appeared in Caldwell *v.* Anderson, or in Harrison's Appeal, 4 Out., 458, the decisions would have been different.

Mr. Justice GREEN delivered the opinion of the court, January 3d, 1887.

There is no merit in the first assignment of error. We have frequently held that the action of the court below in giving the conclusion of the argument to counsel for one side or

the other is not reviewable on error. But here the main burthen of the case rested with the contestants to the conclusion of the contest. It was for them to satisfy the jury as to the truth of their allegations, and there was, therefore, propriety in awarding to their counsel the right to begin and conclude the final argument to the jury. What was said by the court below in regard to the shifting of the burthen of proof in certain circumstances was contingent upon a finding of certain facts by the jury, which finding could not be known in advance and was itself a part of the general duty of the jury. Nor can we say there was error in the language covered by the second assignment. Beyond question, if the will had been written by a stranger who was by its terms the principal beneficiary, the burthen of proving that the testatrix was acquainted with its contents, and had an intelligent consciousness of the proportion of the estate to be taken by the beneficiary, would rest upon him. But the court below made a most ample exception to this rule in favor of the plaintiff, because he was a son of the testatrix and therefore had a right of importunity in his own favor without incurring the penalty of affirmative proof. The qualifying language which re-imposed the burthen upon him in certain circumstances was applicable to the effect of other and additional facts, one of which was that the will was not read to the testatrix, nor by her, nor explained to her before its execution, nor read by her afterwards before her death, providing this and the other facts referred to in the charge should be found by the jury. Certainly, if such facts were found by the jury, they would altogether rebut the legal presumption of knowledge of contents, arising from the mere fact of execution, and then, without the help of affirmative testimony from the proponent showing knowledge of contents and free will in the execution, the jury would be justified, indeed required, to render their verdict against the will. All that the court said was, that if these facts were found the burthen of proof would rest with the proponent, and in this there was no error.

The remaining assignments allege error in submitting to the jury the question whether there was fraud or undue influence in procuring the will, on the part of the plaintiff, and whether the will was executed by the testatrix without a knowledge of its contents. Of course these are questions of fact within the exclusive province of the jury, which includes the credibility of witnesses, and this court is not at liberty to review and revise the action of the jury, unless we are prepared to say there was no evidence beyond a scintilla, in support of the verdict. After a most patient and careful study of the testimony, we find ourselves unable to take that position.

[Blume *v.* Hartman.]

The great and very serious difficulty with the plaintiff's case is that, by his own testimony, it is almost distinctly and affirmatively proved that his mother did not know the contents of the will at the time she signed it. He said he finished its preparation between four and five o'clock on the morning of December 24th and then went to bed. Between nine and ten of the same morning, still having it in his exclusive possession, he showed it to his counsel, and at about ten o'clock, or soon after, he brought it to his mother and left it with her. He admits that he neither read it to her nor explained it to her. He says he was gone for awhile and then returned for a few minutes and then went for the witnesses. All the persons present at the signing concur in saying that the will was neither read nor explained at the time of execution. The plaintiff admits, and the others testify, that he took the will into his own possession very soon, if not immediately, after it was executed, and it remained there until it was probated. There is no evidence that the testatrix ever saw it, read it, or heard it read or explained at any time after the plaintiff took it on the day of its execution. During the short time the will was accessible to the testatrix, after it was left with her on the day of its execution and before it was signed, her daughter, Mrs. McClure, was with her, and testified that her mother laid the will down on the bed beside her and she did not know what became of it afterwards. She said the will was not read to her mother and was not read at all, and that her mother asked for some paper to make signatures upon while her brother was gone for the witnesses. She does not say her mother read the will, but clearly implies that she did not. When the plaintiff was examined in the Orphans' Court he did not say his mother read the will or any part of it or attempted to read it. When he was examined in the Common Pleas, he sought to convey the idea that she read a part of the will, without absolutely testifying that she did actually read it. After all he said was finished, he was asked in cross-examination—and this was the last of his testimony on this subject: " Q. Was she reading it? A. I didn't say she was. Q. Do you say now she was reading the will? A. No sir, I do not. Q. Do you say she ever read it? A. I do not say she did. I said she was reading from the beginning, and I thought it was open about there, from articles five to eight." The time at which he said this took place was during the short interval immediately after he gave her the will and before he went out for the witnesses. It was the same time that Mrs. McClure went into the bath-room, but not longer than four minutes, according to her testimony. After searching the testimony most thoroughly, we can discover no possible opportunity for

[Blume v. Hartman.]

the testatrix to have become acquainted with the contents of the will, even upon the testimony of the plaintiff, except in this exceedingly short period, and that testimony fails to prove knowledge of the contents, in the least degree satisfactory to a jury or a court. That the plaintiff's testimony was changed in regard to this most important subject from his first examination in the Orphans' Court, when he said nothing about his mother's having read any part of the will, until he was examined in the Common Pleas, even if he had then sworn positively to her reading the whole of it, was in itself a most damaging circumstance against his credibility. His pecuniary interest in making the change in his testimony was enormous. His reputation as a man of fairness and honor was also deeply involved. The necessity for a change in his former statement was simply overpowering for, without it, it was scarcely possible to expect a recovery. In such circumstances the temptation to depart from the strict truth was so very great that the right of a jury to discredit the changed testimony must be conceded. It is scarcely too much to say that no disinterested tribunal would give the slightest credence to it. But the new testimony was not even distnct or positive that the will was actually read by the testatrix. It was inadequate, it was contradictory, it was confused and so uncertain on the point whether there was any real reading of the will by the testatrix, that, even if the witness had been disinterested, the jury would have been entirely justified in giving no weight to it whatever. There were many other considerations, such as the great inequality of the distribution made by the will, the repeatedly expressed declarations made by the testatrix to the effect that she intended to divide her property equally among her children, and her personal relations with her children, which bore as well upon the question of undue influence as upon knowledge of contents, which were or might be fairly influential with the jury. We can not however go into an extended discussion of these matters. It is not necessary. We refer to them only as illustrative of the proposition that there was evidence proper for the determination of the jury on both the issues. It would be quite impossible for us to say as matter of law that there was no evidence beyond a scintilla, tending to show ignorance of the contents of the will. To us it seems clear that the evidence greatly preponderated in favor of the allegation that the testatrix was not acquainted with the contents of the will, and if she was not it can not be said that it was legally her will.

On the question of undue influence of course there was no evidence of physical force or personal constraint. But of that kind of influence which accomplishes its results by misrepre-

[Blume v. Hartman.]

sentations, by deceit, by fraud, we cannot say there was no evidence, the plaintiff, unfortunately perhaps for himself, chose to conduct his proceedings in the procurement and the preparation of the will and in the inducements to his mother to sign it, secretly and by himself alone. There is absolutely no evidence whatever except his own to support his own allegations as to his communications with her. Apparently he was not even willing to suffer the presence of a lawyer, though employed by himself, at his interviews with his mother. He is directly responsible, therefore, for every inference which may fairly be made against him as to the means he employed to obtain the assent of his mother to the execution of the will in question. The evidence of a testamentary intent on her part to make an equal division of her estate among her children comes from so many different persons, is so voluminous, so direct, so emphatic and so entirely credible apparently, that it can not but be regarded as a very important element in the inquiry whether the will she signed expressed her real, or an imposed, intent. It was very easy for the plaintiff to set this question entirely at rest by simply having her communicate her intentions in the presence of a third person, or by reading the will to her, or explaining it to her, or having her read it in such a presence. But he did not do this, and because he did not do it he is subject fairly to an inference that the will did not contain her true testamentary purpose. For if it did it would not only be largely to his pecuniary interest but to the defence of his character as an honorable man to let at least some one other person know the fact from her, that she assented to its terms. Of course, if there were clear proof that she had read it, the same result would have been reached, but there is no such proof. Her condition at the time is also a matter of much importance in this connection. That she was in a state of excessive feebleness and exhaustion, physically, when the will was signed, is proved by so many disinterested witnesses that the plaintiff's testimony to the contrary might well be discredited by the jury. In such a state of bodily health the jury might well have inferred a condition of mind easily controlled by one in a confidential relation, as a son to his mother. The undisputed fact, testified to by the plaintiff himself, that he alone had said and done whatever was actually said and done for the purpose of inducing her to make a will, that he alone had consulted with her in regard to it, that he alone prepared it and knew its provisions, proved clearly that he was the one person who procured it to be made and executed. If from all the evidence the jury believed that the will she signed did not reflect her true testamentary intent, but something quite different, they were justified in inferring that she had been imposed

[Morrison v. Nellis.]

upon by her son, since no one else, under the evidence, could have done so. The immense inequality of division also is a circumstance in support of such a theory. He cannot say, therefore, that there was no evidence of undue influence proper to be submitted to a jury. In making these comments upon the testimony we have not undertaken to present both sides of the case as that is not our proper function. It is not for us to determine the facts upon their merits, but only to show that there was evidence in support of the verdict sufficient to be submitted to the consideration of the jury for their determination of the issues they were to try. We think it unnecessary to prolong the discussion. The learned judge who tried the cause treated it fairly and dispassionately as it seems to us, and gave to the plaintiff every opportunity to have his views and his facts carefully considered. We see no error in the various matters assigned as erroneous, and must therefore affirm the judgment.

Judgment affirmed.