## Spence's Estate.

*Wills — Undue influence — Testamentary capacity — Wife's will written by husband—Husband principal beneficiary—Issue devisavit vel non—Refusal.*

1. Where a husband writes his wife's will, in which he is named as sole beneficiary to the exclusion of their children, the burden of proving that the husband exercised undue influence over his wife is upon the contestant.

2. A petition for an issue devisavit vel non asked for on the ground of undue influence and lack of testamentary capacity was properly refused where it appeared that testatrix devised her entire property to her husband, the proponent, to the exclusion of their two children; that for some years the husband and wife had lived apart but their relations were friendly; that the son became ill and the husband went home to assist in nursing him, and the wife contracted the illness and during such illness dictated a will to her husband, who wrote it down and gave it to her; that she read and

signed it and the husband did not see it again until after her death when it was found in her bureau drawer; that the son and daughter were of dissolute habits and unworthy of their parents; and where there was evidence that the wife's mind was clear at and before the time when the will was made and the evidence to the contrary was not sufficient to support a verdict, and there was nothing to show that the husband had exercised any influence over her to induce her to make the will.

Argued April 30, 1917. Appeal, No. 4, Jan. T., 1917, by Ruth Frances Spence and Ezra D. Spence, from decree of O. C. Warren Co., Dec. T., 1914, No. 32, refusing petition for an issue devisavit vel non, in Estate of Hattie V. Spence, deceased. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Petition for an issue devisavit vel non. Before HINCKLEY, P. J.

The opinion of the Supreme Court states the facts.

The court refused the petition. Petitioners appealed.

*Errors assigned* were in dismissing the petition.

*D. U. Arird,* for appellants, cited: Ketterer's Est., 17 W. N. C. 15; Thomas's Est., 20 W. N. C. 336; Palmer's Est., 6 Pa. C. C. 541; Cuthbertson's App., 97 Pa. 163; Appeal of Knauss et al., 114 Pa. 10; Surface v. Bentz, 228 Pa. 610; Blume v. Hartman, 115 Pa. 32; Miller's Est., 179 Pa. 645; Wilson's App., 99 Pa. 545; Reinard's Est., 32 Pa. Superior Ct. 608; Nichols v. Nichols, 149 Pa. 172; Darlington's App., 86 Pa. 512; Phillips' Est., 244 Pa. 35; Cozzens' Will, 61 Pa. 196; Herster v. Herster, 116 Pa. 612; McNitt v. Gilliland, 246 Pa. 378; Frew v. Clarke, 80 Pa. 170; Dornin's Est., 256 Pa. 101; Gongaware et al. v. Donehoo et al., 255 Pa. 502; Harrison's App., 100 Pa. 458.

*John B. Brooks,* with him *Charles H. English,* for appellee.

OPINION BY MR. JUSTICE WALLING, June 30, 1917:

This appeal is from a decree of the Orphans' Court refusing to award an issue in a will contest. John C. Spence, the proponent, is the husband and Ruth Frances Spence and Ezra D. Spence are the only children of the alleged testatrix, Hattie V. Spence, late of Warren, Pa., deceased. Mr. and Mrs. Spence were married about 1885 and thereafter resided with her parents at Warren, where for some years he worked as a machinist; then he worked for a time in Oil City and for the last twenty years more or less has been employed at his trade in Erie, Pa. However, Mrs. Spence and the children continued to live with her people in Warren until their death some years ago and thereafter she and the children remained in the family home. Mr. Spence was an industrious man of good habits, and, after his work took him from Warren, contributed to the support of his family and visited them as he had opportunity. There is nothing to support the allegation that there was at any time an estrangement between him and his family, although the relations between him and his mother-in-law were not cordial. The main reason why Mrs. Spence failed to remove with her husband to Oil City and Erie was a mutual desire between her and her parents that she remain with them. Late in the fall of 1913 the son, Ezra, then nineteen years of age, was seriously ill with typhoid fever, and, at his mother's request, the father returned to Warren and assisted in caring for the son. As he was regaining his health Mrs. Spence was stricken with the same malady, and, according to the testimony of Mr. Spence, realizing its probable fatal termination, requested him to procure paper that a will might be prepared, which he did and at her dictation wrote for her a will as follows, viz:

"Dec. 15, 1913.

"If this is the fever I have got I will never get over it. If I die, I want to leave to you my husband, John C. Spence. I will to you the property my father left me.

The house and Lot 513 West 5 St., Erie, Pa., and the house 3 N. & 313 Laurel St., Warren, Pa.

"Ezra has spent a good deal of the money father left me, if he had the property in his hands it would not last him one year. If I die take good care of Ezra for my sake. Take him away from his comrades in Warren for that is his ruin.

"I also give you all the furniture in the house, but attend to my boy for my sake.

"MRS. HATTIE V. SPENCE."

Spence further says when he had finished writing the will he gave it to her to read, and that then he was called out of the room to give water to the sick son and on his return found her sitting up in bed in the act of signing the will, and that he did not see it again until three or four days after her death when he found it in her bureau with other valuables.

They had no nurse, the parents cared for the son, and, later, the father with some help of the son cared for the mother, until she was removed to the hospital two or three days prior to her death, which occurred December 24, 1913. She left no other will. Ruth was then about twenty-five years old, of dissolute habits, had been from home for several years and her place of abode was unknown to the family. Ezra was dissipated and idle with no serious view of life. In fact, the children were unworthy of their parents. The will apparently included all of Mrs. Spence's property and was duly probated, from which the children appealed to the Orphans' Court, and later took this appeal from that court's refusal to award an issue. Their contention was lack of testamentary capacity, and fraud and undue influence on part of proponent.

The evidence clearly establish that the signature is genuine and that testatrix, prior to her last sickness, was of sound mind and good business ability. Taking the testimony as a whole it will not sustain a

verdict setting aside the will for lack of testamentary capacity. On that question contestants called three witnesses, the son, Ezra, and two physicians, Dr. Haines and Dr. Durham. The son's reputation for truth and veracity was successfully attacked, and, under all the circumstances, his evidence is not worthy of serious consideration. The testimony of Dr. Haines, the family physician, throws but dim light on the ability of Mrs. Spence to make a will on December 15, 1913. He says in answer to one question, "I couldn't say that she did not know what she wanted to do." He also says, "You could ask her a question and she would give a perfectly right answer to it." When asked his opinion as to her ability to comprehend the will in question at its date says: "By her attention being called to that will she would know that the will was being read to her. I don't think she could concentrate her mind on it without being roused up. She was so full of toxin that she couldn't hold her mind on it long enough to go through the things without having her attention called to it." The doctor, while not certain as to exact dates, states that she continued to fail until the end. Dr. Durham saw her but once and that was on the evening of December 16, 1913, and gives the opinion in substance that she was not then capable of making a will; but he saw her only about ten minutes and she was in bed in a drowsy condition and he did not rouse her or have or attempt to have any conversation with her whatever. He judges simply by her general condition as he saw it. Proponent testified that he was with his wife constantly and that her mind was perfectly clear when the will was made and remained good until she was taken to the hospital. Her grocer states that she was in his store on the evening of December 13, 1913, that he conversed with her and she was as usual except complained of not feeling well. His evidence is fully corroborated by that of a lady clerk. Their recollection of the date is refreshed by a memorandum of what Mrs. Spence pur-

chased. The will seems more the natural expression of a distressed woman than what a husband would probably write of his own volition. Her signature being normal tends to disprove contestants' contention as to her physical and mental condition. The will is also supported by the presumption of testamentary capacity, and by the fact that it gives the property to the only member of her family worthy thereof, or who would probably retain it.

The evidence establishes no circumstances indicating that the will was procured by fraud or undue influence. There is nothing to indicate that Mr. Spence had or exercised any influence over his wife, except that he was her husband; and, being a near relative, the fact that he wrote the will in which he was sole beneficiary does not cast upon him the burden of proof as it would in case of a stranger: Blume v. Hartman, 115 Pa. 32. Mrs. Spence is presumed to know the contents of the paper signed by her: Vernon v. Kirk, 30 Pa. 218; Dickinson v. Dickinson, 61 Pa. 401; Frew v. Clarke, 80 Pa. 170. That presumption is supported by proponent's testimony and is nowhere contradicted. In this respect this case differs from that first cited for there the evidence tended to show that the will was not read to or by the testatrix, or explained to her, before or after its execution, and there the question of her knowledge of the contents of the will was submitted to the jury.

There is evidence that on one occasion Mr. Spence declined to permit a lady friend and her son to see Mrs. Spence, and stated that he was not permitted to do so, while the doctor had given no such instructions. This is denied by Mr. Spence; but if true it is of slight significance. She may have been asleep or too ill to receive callers. It certainly is not against Mr. Spence that he was very attentive to his family during their serious illness. We have not overlooked the fact that when recalled as a witness Mr. Spence made some changes in his testimony as at first given; nor of his

interest in the result of this case. The president judge of the Orphans' Court gave the case careful consideration, and we agree with his conclusion that under all the evidence a verdict setting aside the will could not be sustained, and that therefore no such substantial dispute has arisen as to justify granting an issue.

A recent leading case upon this subject is Phillips' Est., 244 Pa. 35.

The decree is affirmed at the cost of appellants.