# Hopkins's Estate.

*Will—Probate—Testamentary capacity—Evidence.*

1. The will of a man ninety-one years of age, who is shown by his family physician and others to have been normal and rational although physically infirm, will be sustained, where it appears that the will was written at testator's request by his pastor, that it was read over to him, that it met his approval, that it was then placed in a locked box, that subsequently it was taken out by testator himself, and executed in the presence of subscribing witnesses.

2. In such case it is immaterial that the will was not read to testator at the time of its execution, or that testator's hand was steadied while he was signing it.

Argued February 19, 1923. Appeal, No. 155, Jan. T., 1923, by W. R. Simms et al., from decree of O. C. Lackawanna Co., No. 447, year 1921, dismissing appeal from register of wills, in estate of Benjamin Hopkins. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from register of wills. Before SANDO, P. J.

The opinion of the Supreme Court states the facts.

Appeal dismissed. W. R. Simms et al., contestants, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*A. A. Vosburg,* for appellants.

*M. J. Martin,* for appellee.

PER CURIAM, April 9, 1923:

Benjamin Hopkins died April 19, 1921, at the age of ninety-one years, leaving a will dated April 15, 1919, in which he gave the bulk of his property to his stepson, William E. Griffith and Mary Griffith, his wife. The will was probated April 28, 1921, and letters testa-

mentary granted to William E. Griffith by the register
of wills of Lackawanna County.    On petition of appel-
lants, a citation was awarded June 25, 1921, directed to
William E. Griffith to show cause why the letters granted
him should not be revoked and an issue devisavit vel non
ordered to determine, (1) Whether testator at the time
of executing the alleged will was, by reason of impaired
eyesight, able to read the paper and attach his name to
it; (2) If the paper was read to him at the time of its
execution; (3) If it was procured by undue influence by
William E. Griffith, and (4) Was the paper signed by
testator the one prepared by his pastor according to in-
structions?    Respondent answered fully.    The court,
after hearing testimony produced by the parties, dis-
missed the petition and sustained the action of the regis-
ter.    Petitioners appealed.

The testimony of the various witnesses, which in sub-
stance is as follows, fully sustains the action of the court
below: The will was prepared at the request of testator
and in accordance with his desires by the pastor of the
church testator attended; was carefully read to him by
the minister in the presence of the latter's wife, pro-
nounced "all right" by testator and by him, in the pres-
ence of the minister and his wife, placed in a small iron
box under lock and key, with the remark that he would
have it witnessed by two of his neighbors, as the minis-
ter "might get a call to another place and not be here
when needed."    The witnesses to the will, neighbors of
testator, testified they had known him for many years
and visited his house at his request; that he brought the
small iron box into the room, took a key from his vest
pocket, unlocked it and, having removed from it the
paper, informed witnesses it was his will; signed it with
the assistance of an uninterested third person, who
steadied testator's hand while writing his name, and re-
quested them to sign as witnesses, which they did in his
presence and the presence of each other.    Testator then
returned the will to the box, locked it and put the key in

his vest pocket. These witnesses, as well as others, testified that, while testator's eyesight was quite poor, he was able to read with the aid of a magnifying glass and "go around" unassisted. "That he was a bright old man ......a man that was pretty positive in his convictions." The family physician testified that, although testator was physically infirm, he was otherwise "normal and rational" and that he had observed "no impairment of intellect." Testator lived alone in a small house near the one occupied by the Griffith family. Mr. Griffith attended to testator's business and Mrs. Griffith "cooked his meals and took care of him."

We fail to find evidence indicating the will signed by testator was not the one prepared by the minister; on the contrary, both the minister and his wife, after examining the paper, say it is the one prepared in accordance with testator's desires. The fact that the will was not read at the time of its execution is immaterial, as is also the fact that testator's hand was steadied while signing. Nor do we find the slightest degree of evidence tending to establish undue influence on the part of either Mr. or Mrs. Griffith, or any other person.

The judgment is affirmed at costs of appellants.