## Cohen Will.

Argued November 10, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and BARBIERI, JJ.

*Paul Maloney,* with him *Pepper, Hamilton & Scheetz,* for appellant.

*Ronald Ervais,* with him *Steven J. Hartz,* and *Becker, Fryman & Ervais,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, December 20, 1971:

This appeal arises out of a contest over a will which was executed by Abraham Cohen, M.D., on December 31, 1968, while he was a patient in the Abington Memorial Hospital. This will was duly admitted to probate, and Letters Testamentary were granted thereon. On December 10, 1970, the Orphans' Court Division of the Court of Common Pleas of Montgomery County, after hearing, dismissed the appeal of Dr. Richard W. Cohen, the testator's only child, from the Register's decree. This appeal followed.

Appellant contends that his father's will should be denied probate. He alleges that the testator did not have testamentary capacity at the time he signed the will. In addition, he alleges that the testator did not intend to make the disposition of his estate which the will of December 31, 1968, would effect. After a careful review of the record, we reject both of appellant's contentions and affirm the decree of the orphans' court.

Preliminarily we should note that in reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence. See, e.g., *Holtz Will,* 422 Pa. 540, 544, 222 A. 2d 885, 888 (1966); *Hunter Will,* 416 Pa. 127, 136, 205 A. 2d 97, 103 (1964).

The record establishes that on June 11, 1968, testator, a physician, prepared for himself a will which in essence divided his estate equally between his wife and his son. On the evening of December 29, 1968, testator had his wife drive him to the Abington Memorial Hospital. There testator, a member of Abington Memorial's staff, was placed in the hospital's coronary care unit.

On the evening of December 31, 1968, I. Jerome Stern, Esq., brought to the hospital a new will which he had prepared at testator's request. This will contained a bequest to testator's wife in the amount of the maximum marital deduction, and created a residuary trust whose income was to be distributed to testator's wife. The will was signed that evening. Testator was released from the hospital on January 29, 1969, and died less than three months later on April 18, 1969.

Appellant urges that testator lacked testamentary capacity[1] at the time he executed the December 31, 1968, instrument. We have long held that once the execution of a will is proved by the required two witnesses, as it was here, a "presumption of testamentary capacity" arises which can only be overcome by "clear, strong, and compelling evidence." *Brantlinger Will*, 418 Pa. 236, 242, 210 A. 2d 246, 250 (1965). We agree with the orphans' court that appellant has failed to sustain his burden of proving that testator lacked testamentary capacity.

Appellant produced two witnesses on the issue of testamentary capacity.[2] Dr. Roderick Kitchell, testa-

---

[1] We have consistently held that the test for testamentary capacity is whether the testator, at the time he executed the will in question, had an intelligent knowledge regarding the natural objects of his bounty, of what his estate consists, and of what he desires done with his estate, even though his memory has been impaired by age or disease. See, e.g., *Protyniak Will*, 427 Pa. 524, 529, 235 A. 2d 372, 375-76 (1967); *Hunter Will*, 416 Pa. 127, 134-35, 205 A. 2d 97, 102 (1964).

[2] Appellant visited his father on the evening of December 31, 1968, but when asked whether he considered his father capable of

tor's attending cardiologist, admitted that at the time of testator's hospitalization he was "not particularly interested" in testator's mental condition. When asked for his opinion of testator's competency on December 31, 1968, the most that Dr. Kitchell could state was: "I would say that his judgment was not of the best."

Appellant's other witness, Dr. Bernard L. Segal, had never examined or even seen testator. Nevertheless, Dr. Segal testified that on the basis of the hospital records it was his opinion that testator "could not have possessed full testamentary capacity". However, Dr. Segal's testimony was subsequently rebutted by Dr. Theodore Rodman, a cardiologist who testified from the hospital records on behalf of the proponents of the will.

Proponents, on the other hand, presented a great deal of convincing evidence of testator's capacity. Betty J. Kerling, a nurse at Abington Memorial Hospital and one of the subscribing witnesses to the contested will, testified that testator knew that he was signing a will that had been prepared previously. The testimony of Attorney Stern indicated that testator was alert and fully aware of what he was doing when he signed the challenged will. Testator's widow testfied that on December 31, 1968, her husband's memory and judgment were unimpaired. Furthermore, proponents produced check stubs which indicated that testator, on December 31, 1968, wrote several checks in payment of his home mortgage and office rentals. Such evidence is particularly relevant in view of our oft-repeated holding that "testamentary capacity need not rise to the level required to conduct business affairs." *Brantlinger Will*, supra, at 248, 210 A. 2d at 253.

---

executing a will at that time, he stated: "There's no way that I could evaluate capability. He was asleep when I came in. He was arousable."

Appellant's second contention is that testator did not intend to adopt the testamentary scheme set forth in the will of December 31, 1968. Appellant is correct in his assertion that if the December 31, 1968, will is to be admitted to probate, testator must have had knowledge of the contents of that will. *Blume v. Hartman*, 115 Pa. 32, 39, 8 Atl. 219, 222 (1887); see 1 Bowe-Parker: Page on Wills, §5.8. For a will is defined as " 'the legal declaration of a man's intentions, which he wills to be performed after his death' . . ." *Sciutti Estate*, 371 Pa. 536, 539, 92 A. 2d 188, 189 (1952) (quoting Blackstone). And if a decedent had no knowledge of the contents of a document purportng to be his will, it cannot be said that such a document is a declaration of that decedent's intentions.

Although proof of execution of a will raises the presumption that testator had knowledge of its contents, *Spence's Estate*, 258 Pa. 542, 547, 102 Atl. 212, 214 (1917); *Frew v. Clarke*, 80 Pa. 170, 180 (1876), proponents did not merely rely on this presumption. Instead, although Attorney Stern admitted that testator never read the will which he signed on December 31, 1968, either on that date or subsequently,[3] Attorney Stern did testify that he prepared the probated will in accordance with testator's express instructions that he wanted to leave his entire estate to his wife. Furthermore, Attorney Stern testified that when he visited testator in the hospital on December 31, 1968, he explained the provisions of the probated will to testator. In order to counter Stern's testimony, appellant and a Sol Berman testified that testator indicated subsequent to December 31, 1968, that he wanted to divide his assets equally between his wife and his son. However,

---

[3] We have never held it to be a *sine qua non* of a valid will that testator read the will. See *Combs' and Hankinson's Appeal*, 105 Pa. 155, 160 (1884); *Dickinson v. Dickinson*, 61 Pa. 401, 407 (1869); cf. *Hopkins's Estate*, 277 Pa. 157, 120 Atl. 807 (1923).

554

after reviewing all this testimony, we cannot say that the chancellor's finding that testator had knowledge of the contents of the December 31, 1968, will was erroneous.

Accordingly, the decree of the orphans' court is affirmed. Each party to pay own costs.

Mr. Chief Justice BELL and Mr. Justice POMEROY took no part in the consideration or decision of this case.