## Protyniak Will.

Argued October 3, 1967. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Fred P. Anthony,* for appellants.

*Gabriel A. Bifulco* and *Jess S. Jiuliante, Jr.,* with them *Chase, Bifulco, Mangan & George,* and *Jiuliante, Jiuliante & Kelleher,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, November 14, 1967:

This is an appeal from the Decree* of the Orphans' Court of Erie County, Pa., sustaining the validity of

---

* Incorrectly called "Order."

the last will of Katherine Protyniak. Mrs. Protyniak died on November 25, 1965, a resident of Erie County. In her short, clear will which was drawn by her attorney, Mrs. Protyniak devised and bequeathed one-half of her residuary estate to her daughter, Marie Reed, and the other half to two of her grandchildren, Joseph W. Rahal and Frederick E. Rahal, who were the children of her other daughter, Katherine Rahal. Katherine Rahal was appointed executrix. Mrs. Protyniak was survived by Marie Reed and by Mrs. Rahal, and by testatrix's two above-mentioned grandchildren, and also by three sons, William R. Atkins, Steve Protyniak and Theodore Protyniak, who are the contestants of the will and the present appellants.

Following an appeal from the Register of Wills who sustained the will, the hearing Judge granted the petition of the contestants and found the will to be invalid. The Judge based his decision on his conclusion that testatrix suffered an insane delusion which caused her to draw her will differently from the way she would have drawn it if the insane delusion had not existed. Exceptions were filed to the Judge's "Order and Opinion." On April 7, 1967, the same Judge, sitting alone as the Court en banc, (1) reversed his prior decision, and (2) found that contestants' evidence was not legally sufficient to prove that testatrix suffered an insane delusion at the time she executed her will, and (3) sustained the validity of the will.

Appellants rely upon six contentions: (1) the testatrix was suffering from an insane delusion when she made her will; (2) the testatrix lacked testamentary capacity at the time she executed her will; (3) the burden was on the proponents of the will to prove that testatrix had testamentary capacity; (4) the will was procured by undue influence; (5) a confidential relationship existed between testatrix and the proponents of the will, and therefore proponents had the burden

of proving that no undue influence was exercised; and (6) the trial Court erred in allowing hearsay evidence to be produced by the proponents of the will.

The record in this case totals 881 pages. Appellants' voluminous testimony may be summarized by stating that their mother was of low intelligence; she could not read or write and had difficulty in using the English language and her native Ukrainian language; she did not like business and had not attended to business for at least a couple of years before her husband's funeral, which was three days before her will was drawn; she was forgetful; she was sometimes hard to understand and on occasions made flighty statements; she had a weak heart and arteriosclerosis; at her husband's funeral (a) she appeared to be dazed and (b) did not seem to recognize some of their friends, and (c) said that she had given her husband breakfast the morning he died and that he was suddenly taken by death, when neither of these facts was accurate. Furthermore, her family doctor testified that in his opinion she lacked testamentary capacity. On the other hand, virtually all of these statements and virtually all of the testimony produced by appellants was contradicted by witnesses for the proponents of the will. In particular, the lawyer who drew the will testified that the testatrix had testamentary capacity at the time she executed the will.

The lower Court found that it is indisputable that testatrix, who was 66 years old at the time of her death, (a) was a person of low intelligence, (b) was not able to read or write in English or in her native Ukrainian; (c) she was very dependent upon her husband and their five children; (d) all of her children got along very well with her and they were a close, friendly family at the time of the execution of the will and all of them were helpful to their mother; (e) her husband wanted her to leave her property to their

daughters; and (f) *a year after she made her will* and a few days before her death, she was declared incompetent.

Mrs. Protyniak, accompanied by her daughters, went to see her lawyer about her husband's will and his estate. Her attorney advised her to make her will, and when she agreed, sent her daughters out of the room. When her attorney discussed with her how and to whom she wanted to leave her property, she told him she wished to leave it the way it was thereafter bequeathed in her will. He then questioned her about not leaving anything to her sons. To this question she replied: "The boys got property, they have got their own homes, and the two daughters don't have any, so I want it to go to them." In fact, two of her sons did own their own homes, but the third son, Theodore Protyniak, did not—he lived with his mother-in-law in her home. One of testatrix's two daughters, Marie Reed, did not own her own home, but the other daughter, Katherine Rahal (whose children were given one-half of testatrix's estate) did. Testatrix's answer and these facts are the basis for appellants' contention that their mother had an insane delusion.

While the testatrix was mistaken factually as to which children owned their own home, such a mistake does not amount to or constitute an insane delusion: *Sommerville Will,* 406 Pa. 207, 177 A. 2d 496.

The question of what constitutes (1) testamentary capacity, (2) an insane delusion, (3) undue influence, (4) a confidential relationship, and (5) the burden of proof of each of these, (6) as well as the weight to be given to a doctor's testimony, has been thoroughly analyzed in recent decisions of this Court, and the law with respect thereto clearly set forth therein.*

Appellants rely principally upon the contention that testatrix (a) was suffering from an insane delu-

---

* See **infra.**

sion and (b) lacked testamentary capacity. There is no evidence legally sufficient to prove an insane delusion, and the testimony as to testamentary capacity was (at best for appellants) conflicting; and the Court below, basing its findings and conclusions upon adequate and ample evidence, resolved the conflicting testimony in favor of testamentary capacity.

In *Sommerville Will*, 406 Pa., supra, the Court analyzed and discussed in detail and at length the evidence necessary to prove an insane delusion and lack of testamentary capacity, and the applicable and well established principles of law. The Court pertinently said (pp. 214, 216, 217, 218) : "What is an insane delusion as that term is known to the law? All of the cases of this Court have agreed for over 100 years that an insane delusion is 'a mere figment of the imagination, a belief in the existence of something which does not exist, and which no rational person . . . [in the absence of evidence] would believe did exist.' [Citing 19 cases]

. . .

" 'Testamentary capacity is presumed and the burden of proving lack of testamentary capacity or an insane delusion is upon those who assert it: Lauer Will, 351 Pa. 438, 41 A. 2d 552; Sturgeon Will, 357 Pa. 75, 53 A. 2d 139; O'Malley Will, 370 Pa. 281, 88 A. 2d 69; Kerr v. O'Donovan, 389 Pa. 614, 134 A. 2d 213; Williams v. McCarroll, 374 Pa. 281, 97 A. 2d 14.

. . .

" ' . . . " ' . . . a decedent possesses testamentary capacity " . . . if he has an intelligent knowledge regarding those who are the natural objects of his bounty, of what his estate consists, and of what he desires done with it, even though his memory has been impaired by age or disease" ': Franz Will, 368 Pa. 618, 622, 84 A. 2d 292; also Sturgeon Will, 357 Pa. 75, 53 A. 2d 139;

Ash Will, 351 Pa. 317, 41 A. 2d 620; Olshefski's Estate, 337 Pa. 420, 11 A. 2d 487."

. . .

" '. . . It is difficult to formulate a definition of an insane delusion which will cover every possible case, but the general rule is clear that it must be, as its name implies, an insane delusion, and that it must have caused decedent to make his will in a manner entirely different from what he would have if the insane delusion did not exist.

" 'In Johnson Will, 370 Pa., supra, the Court, quoting from Leedom Estate, 347 Pa. 180, 32 A. 2d 3, said (page 129): " 'It is well settled that "A delusion which will render invalid a will executed as the direct result of it is *an insane belief or a mere figment of the imagination—a belief in the existence of something which does not exist* and which no rational person, in the absence of evidence, would believe to exist:" Alexander's Estate, 246 Pa. 58, 62. . . .' " ' " (Emphasis in Sommerville Opinion)

The Court further pertinently said (pp. 220-221, 226-227): ". . . it is not enough that the testatrix should have a delusion—it must be an insane delusion. This distinction has been clearly drawn ever since 1902 when this Court in Bennett's Estate, 201 Pa., supra said (page 490): 'But all delusions are not insane delusions. A man may, from information given him, believe that his son is dead, when, in point of fact, the son is alive. The father's belief is a *delusion;* and if, when his son appears to him in person and explains that the information was false, the father persists in thinking him dead, his belief becomes an *insane delusion.* The difference between the two species is that one is the product of the reason, and the other a figment of the imagination.' [Emphasis in Sommerville Opinion]

. . .

"The doctrine of insane delusion is at best a dangerous one and should not be extended beyond its present limitations and clearly defined boundaries. The Courts, recognizing this danger, have strictly limited, circumscribed and restricted the doctrine and in over 100 years have applied it less than 6 times. The reasons for its restriction are abundantly clear from the authorities hereinabove quoted and cited. . . ." Accord: *Brantlinger Will*, 418 Pa. 236, 210 A. 2d 246.

The testimony on behalf of the proponents of the will contradicted or conflicted, we repeat, directly or materially, with the testimony of witnesses for the contestants and showed, inter alia, that Mrs. Protyniak actually did business with a number of them during the two-year period prior to the execution of her will, and that she knew what she was doing. Their testimony, especially that of the attorney who drew her will, in the words of *Sommerville Will*, "aptly illustrate the wisdom of the well established rule that the opinion testimony of medical experts is of very little weight or value when opposed to factual evidence: [citing 10 cases]."

Moreover, in a case such as this, those alleging lack of testamentary capacity or an insane delusion or undue influence (unless a confidential relationship exists combined with a weakened mentality) must prove their contention by clear and convincing evidence: see *Sommerville Will*, 406 Pa., supra, and *Brantlinger Will*, 418 Pa., supra; *Quein Will*, 361 Pa. 133, 62 A. 2d 909; *Williams v. McCarroll*, 374 Pa., supra. *Brantlinger Will* reaffirmed and reiterated the law which had been iterated in *Sommerville Will*, supra, with reference to testamentary capacity, undue influence, burden of proof, and the weight accorded the testimony of a doctor in this class of case. Accord: *Masciantonio Will*, 392 Pa. 362, 141 A. 2d 362; *Williams v. McCarroll*, 374 Pa., supra. See also, *Hunter Will*, 416 Pa.

127, 205 A. 2d 97; *King Will,* 369 Pa. 523, 87 A. 2d 469; *Olshefski's Estate,* 337 Pa. 420, 11 A. 2d 487; *Thompson Will,* 387 Pa. 82, 126 A. 2d 740.

Testatrix's will had been prepared, we repeat, by her attorney, whose testimony showed both testamentary capacity and lack of any undue influence, and her signature was witnessed by two subscribing witnesses. When a will is drawn by an attorney who testifies as to decedent's testamentary capacity and is proved by subscribing witnesses, the burden of proving lack of testamentary capacity or undue influence can be sustained only by clear and convincing evidence: *Thompson Will,* 387 Pa., supra; *Williams v. McCarroll,* 374 Pa., supra; *Higbee Will,* 365 Pa. 381, 382, 75 A. 2d 599. While the testimony as to testatrix's testamentary capacity was conflicting, appellants certainly did not prove by clear and convincing testimony the lack of testamentary capacity or undue influence or confidential relationship, and their evidence utterly failed to prove an insane delusion as that term is defined by the Courts.

Where the issues are testamentary capacity, or undue influence, or an insane delusion or insanity, or confidential relationship, the test in an appellate Court is whether the findings of fact approved by the Court en banc are based upon legally competent and sufficiently convincing evidence, and whether the Court below committed an error of law or abused its discretion: *Dettra Will,* 415 Pa. 197, 201, 202 A. 2d 827; *Brantlinger Will,* 418 Pa., supra; *Hunter Will,* 416 Pa., supra; *Lanning Will,* 414 Pa. 313, 200 A. 2d 392; *Masciantonio Will,* 392 Pa., supra; *Williams v. McCarroll,* 374 Pa., supra; *Girsh Trust,* 410 Pa. 455, 467, 189 A. 2d 852.

We have reviewed the record and all of appellants' contentions, but find it unnecessary to discuss in greater detail the evidence or the pertinent authorities. Suffice it to say that there was ample factual

evidence to support the Court's findings of fact and conclusions of law, and the lower Court did not abuse its discretion or commit an error of law which controlled the outcome of the case, and therefore its findings and its Decree must be affirmed.

Decree affirmed, each party to pay own costs.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.