400 A.2d 1268
**ESTATE of Mary F. REICHEL, Deceased.**

**Appeal of John REICHEL, Jr.**

Supreme Court of Pennsylvania.

Argued Nov. 16, 1978.

Decided May 1, 1979.

612

Cuthbert H. Latta, Philadelphia, for appellant.

Calvin S. Drayer, Jr., Norristown, for appellee, Marian Honsaker.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This case arises out of a contest of the will of Mary F. Reichel, who died on January 11, 1975. The estate's assets consisted of a $128,000 marital trust over which decedent had a general power of appointment under the will of her husband, John Reichel, who died in 1957; stock in the American Telephone and Telegraph Company, worth $64,-800; and a residuary estate of $48,400. The contested will provides that all of the trust assets, the stock and one-half of the residuary estate are to go to proponent-appellee,

Marian Honsaker, decedent's daughter, and that the other one-half of the residuary estate is to be received by decedent's son, contestant-appellant, John Reichel, Jr. The will was executed on March 8, 1974. By giving the greater part of the estate to appellee, this will differed from three earlier wills executed by decedent. Her first will, executed in 1957, would have placed one-half of her estate in trust for appellee and given one-half to appellant outright. A 1966 will provided that each would receive one-half of the estate outright. A 1973 will provided that appellee would receive personal and household items and otherwise left the disposition of the estate as provided in the 1966 will.

The disputed 1974 will was offered to the Register of Wills of Montgomery County for probate. Appellant filed a caveat in which he alleged that the will was the result of undue influence exercised upon the decedent by appellee. The register of wills certified the matter to the Court of Common Pleas, Orphans' Court Division, for decision, pursuant to the Probate, Estates, and Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, § 2, effective July 1, 1972, 20 Pa.C.P.S.A. § 907. The court held a hearing at which appellee offered evidence to establish that it was decedent's signature on the will, and appellant produced evidence by which he attempted to show that decedent lacked testamentary capacity, or was at least of weakened intellect; that appellee had a confidential relationship with decedent; and that the will preferred appellee over appellant. Both sides moved for compulsory nonsuit. The court denied appellant's motion and granted appellee's, acting under the authority of the Probate Code, § 779(b), 20 P.S. § 779(b), added December 10, 1974, P.L. ——, No. 293, § 2, immediately effective, which states:

"... A nonsuit may be entered against a contestant in a will contest whenever the contestant has the burden of overcoming the presumption of validity arising from due proof of execution as required by law and the contestant has failed to satisfy that burden."

Exceptions were heard and dismissed by a court en banc. The case is before us pursuant to our jurisdiction over

appeals from final decrees of the orphans' court division of a court of common pleas, Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S.A. § 722.

In a will contest, the hearing judge determines the credibility of witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there was an error of law or abuse of discretion. *Estate of Shelly,* 484 Pa. 322, 399 A.2d 98 (1979). *In re Estate of Ziel,* 467 Pa. 531, 359 A.2d 728 (1976). When the proponent of a will proves that the formalities of execution have been followed, a contestant who claims that there has been undue influence has the burden of proof. The burden may be shifted so as to require the proponent to disprove undue influence. To do so, the contestant must prove by clear and convincing evidence that there was a confidential relationship, that the person enjoying such relationship received the bulk of the estate, and that the decedent's intellect was weakened. *Shelly, supra, Estate of Clark,* 461 Pa. 52, 334 A.2d 628 (1975).

Testamentary capacity exists when the testator has intelligent knowledge of the natural objects of his or her bounty, the general composition of the estate, and what he or she wants done with it, even if memory is impaired by age or disease, and the testator need not have the ability to conduct business affairs. *Brantlinger Will,* 418 Pa. 236, 210 A.2d 246 (1965).

Appellant argues that the court below erred in requiring him to prove an exploitation of the three elements articulated in *Estate of Clark, supra,* before the burden of proof would shift back to the proponent of the will to disprove undue influence. We agree.

In a concurring opinion in *Estate of Clark,* Mr. Justice Roberts (joined by Justices Pomeroy, Nix and Manderino) stated:

"I agree with the majority that where one contesting a will establishes 1) that a person in a confidential relation-

ship with the testator 2) receives a substantial benefit under the will and 3) that the testator was of weakened intellect, a presumption of undue influence arises. The effect of this presumption is to shift the burden of producing evidence and the risk of nonpersuasion on the issue of undue influence to the proponent.

\* \* \* \* \* \*

"Once the presumption has been established, the proponent can prove the validity of the challenged gift by clear and convincing evidence that it was not the result of undue influence. *Button's Estate*, 459 Pa. 234, 240–241, 328 A.2d 480, 484 (1974)."

The above quote makes clear that a contestant to a will needs to show

1) confidential relationship,
2) substantial benefit and
3) weakened intellect

and if such factors are proven by clear and convincing evidence, the burden of proof would then return to the proponent of the will to show that the gift or bequest was not the product of undue influence.

■ A reading of the opinion of the court en banc indicates that the court required the contestant to show that the proponent took advantage of the first three elements before the burden would return to the proponent to rebut the evidence that he or she used the confidential relationship and the weakened intellect to exploit his or her share of the substantial benefit. (Opinion of the court en banc, pp. 5–10).

The case must be remanded for a proceeding consistent with this opinion, *Estate of Shelly, supra,* and the *Estate of Clark,* 461 Pa. 52, 334 A.2d 628 (1975).

Decree reversed and case remanded for a proceeding consistent with this opinion.

POMEROY, former J., took no part in the decision of this case.

616

MANDERINO, Justice, dissenting.

I dissent. The majority notes that "[a] reading of the opinion of the court en banc" indicates that the Court en banc did not properly shift the burden of proof to the proponent of the will on the issue of undue influence after the contestant of the will had established

1) confidential relationship
2) substantial benefit
3) weakened intellect.

I agree with the majority that the trial court said that the burden should not shift in this case and the making of that statement was improper. A complete reading of the Chancellor's opinion and the court en banc's opinion leaves no doubt that the trial court *did not do* what it in fact said it had done. The trial court said:

"The record establishes that on February 3, 1974 when decedent was in Bronxville, New York, visiting her daughter, she telephoned W. Harry Stromenger, Esq., the scrivener of the will. Mr. Stromenger is a resident of Bronxville, New York, a member of the New York Bar, and had specialized in estate and trust work since 1936. He had met decedent in 1960, or earlier, had consulted with decedent in 1966 concerning her then current will, and had prepared a will for decedent in 1973.

In a telephone conference of February 3, 1974, decedent expressed her concern about her daughter's lack of financial means and indicated that her son was well-to-do. Decedent instructed Mr. Stromenger to prepare a new will in which she would exercise her power of appointment under her husband's will in favor of her daughter, and also give to her daughter a substantial block of A. T. & T. stock. On February 6, 1974, Mr. Stromenger forwarded draft of the new will to decedent at her home in Bryn Mawr. On February 14, 1974, after further communications with decedent, Mr. Stromenger forwarded to decedent a revised draft of the new will, which he had re-written pursuant to her instructions. On February 24, 1974, decedent discussed with Mr. Stromenger *at length* the

text of the will which he had drafted. Decedent was satisfied with the will and requested that the will be further changed *only* with respect to the language used in the disposition of her jewelry. The will was revised in accordance with decedent's wishes and was sent to Charles J. Cooper, an attorney in Bryn Mawr, to arrange for its execution by decedent.

On March 8, 1974, Mr. Cooper, D. Scott Kelley, Esq. and their secretary, Mary P. Murray, went to the Bryn Mawr Terrace and visited with decedent for the purpose of having her execute her will. The group engaged in general conversation and then Mr. Cooper discussed the will with decedent. He offered to read the entire will, but decedent said that she preferred that he not read the will, that it was tiring, and that she wanted to get on with signing the will. Mr. Cooper did read item eighth of the will, which provides as follows:

'EIGHTH: I am fully aware that in disposing of my property by this my Will, I have not dealt equally with my two children. This is not because of any difference in my affection for them, but because my daughter is in far greater need of material assistance from me than my son and I have sought to bridge this difference with the means at my disposal. I do so in the confidence that my planning has the approbation of their late father whose labor and providence made it possible.'

Decedent stated that she had given this a great deal of thought and had come to the decision that this was the right thing to do and what her husband would have wanted her to do.

Decedent then signed the will in the presence of the three witnesses and the three witnesses then signed in her presence and in the presence of each other. After the signing of the Will, the three witnesses left. The entire meeting lasted about 45 minutes, during which time decedent engaged in intelligent, understandable, lively, interesting and thoughtful conversation.

The record therefore establishes that decedent did know the contents of the will and that the proper execution of the will was duly proved. Cf. *Cohen Will,* 445 Pa. 549 [284 A.2d 754]. . . ..

The record establishes that the attorney-scrivener knew decedent for some 14 years, consulted with her professionally concerning her estate plan over a period of 8 years, and was a specialist in estate and trust work for about 40 years. With regard to the will in question, the attorney-scrivener spoke directly with decedent on several occasions and had no doubt that decedent was fully aware of her resources and the dispositions which she was making on them. And the record is abundantly clear that decedent knew that her son and daughter were the natural objects of her bounty.

Prior to the preparation of the will, the attorney-scrivener discussed with decedent the securities in her husband's marital deduction trust, her own securities, her jewelry and her cemetery lot. She also discussed with him the respective resources and relative needs of her children. The testimony of the subscribing witnesses establishes that decedent at the very time of the execution of the will engaged in intelligent, understandable, lively, interesting and thoughtful conversation. And her awareness of the importance of the will is evidenced by her statement to the subscribing witnesses that she had given her will a great deal of thought, had for days thought of nothing else, and had come to the decision that this was the right thing to do and what her husband would have wanted her to do.

In these circumstances, decedent having had, at the time she executed her will, an intelligent knowledge regarding the natural objects of her bounty, of what her estate consisted, and of what she desired done with her estate, she possessed testamentary capacity. Cf. *Protyniak Will,* 427 Pa. 524, 529 [235 A.2d 372]. . . ."

The trial court concluded that "there was a *dearth of evidence of any* misconduct on the part of the proponent."

(Emphasis in original). The trial court also said *"the evidence is to the contrary"* and concluded that the proponent exercised no undue influence and testatrix *"made the decisions with regard to the disposition of her estate under conditions unaffected by outside influence or control."* (Emphasis added).

The rule that shifts the burden to the proponent of the will after the contestant has presented evidence of the three enumerated factors simply means that undue influence will be inferred *unless* there is evidence that is accepted, establishing that the proponent exercised no undue influence in the preparation and execution of the will. In this case, the opinions of the trial court make it clear that the trial court accepted as credible very substantial evidence that the proponent was not involved in the preparation and execution of the will. The evidence clearly showed that the testatrix *independently* arranged for the preparation and execution of his will. The trial court in effect shifted the burden to the proponent and then concluded that the burden was met because there was positive evidence that the proponent did not exercise undue influence. This is not a case where after the contestant establishes confidential relationship, substantial benefit, and weakened intellect, the record remains *silent* concerning the circumstances surrounding the preparation and execution of the will. In such a case, the contestant would prevail. Here, the evidence is clearly to the contrary and on the record before us, *accepting the trial court's findings of fact,* we need only draw different conclusions of law—that the burden did shift to proponent *and* the proponent clearly sustained that burden.

A complete reading of the significant portions of the Chancellor's opinion and the court en banc's opinion makes it clear that the proponent sustained her burden; even though these opinions did speak in terms of the burden not shifting, the trial court actually concluded that the evidence established without doubt that there was no undue influence.

The Chancellor said:

"Essentially there is a single issue before us. Has the contestant produced sufficient evidence, of a clear and convincing nature, to result in the shifting of the burden of proof to the proponent, to show an absence of undue influence? There have been a number of cases in Pennsylvania on this subject in the course of which many rules and standards have developed. Very recently the Supreme Court has rendered decisions which bring the law in this area up to date, and state it concisely and comprehensively. We have had recent occasion to consider the effect of this current reconsideration of the law, in *Dunlap Will,* 25 Fiduc. Rep. 529, and there quoted at length from the opinion of Mr. Chief Justice Jones in *Clark Est.,* 461 Pa. 52, 334 A.2d 628. In *Clark,* the Supreme Court considered the development of what was termed two rules of law relating to this issue, one, the so-called old rule, having six separate requirements before the burden of proof would shift, and the more recent rule, having only three. The old rule required proof of (1) bodily infirmity, (2) a weakened mind, (3) a confidential relationship and also that a (4) stranger to the blood of the testator (5) received substantial benefits from a will (6) in the preparation of which he had some part. Cf. *Heffner Est.,* 92 Montg.L.R. 44. The more recent rule is that the requirements of bodily infirmity, stranger to the blood and personal preparation of the Will are to be eliminated, and that where a person (1) in a confidential relationship (2) receives substantial benefits under a will, from (3) a testator of weakened intellect, this is sufficient to shift upon him the burden to show the absence of undue influence on his part.

Recognizing that the appearance of two rules was confusing, the Supreme Court, in *Clark,* held that the latter rule, the one with only three characteristics, should henceforth be the rule in Pennsylvania. Pointing out that the three eliminated factors of the older rule could still remain highly relevant in a final determination of whether or not undue influence had occurred, the Court nevertheless held that proof of bodily infirmity, benefits to a stranger to the blood of the testator, and that the beneficiary was instrumental in

preparing the will, will no longer be required to shift the burden of proof to the beneficiary. These matters were further clarified in *Fickert Est.,* 461 Pa. 653, 337 A.2d 592, where the Court said, '. . . the contestant must establish by clear and convincing evidence that (1) when the will was executed the testator was of weakened intellect, and (2) that a person in a confidential relationship with the testator (3) receives a substantial benefit under the will.'

In *Dunlap,* supra, this Court agrees that the elements of bodily infirmity, as such, and that of benefits to a stranger to the blood are well rid of, since they were not logical. Nevertheless, it is clear that the two rules were not completely distinct from each other but overlapped to a great extent, one articulating in somewhat more detail than the other, perhaps, the circumstances under which a person of normal common sense would conclude that it was more likely that improper influence had been exerted than not. With the rule as now articulated, however, the difficulty, which we referred to in *Dunlap* now has, with surprising rapidity, specifically arisen.

The shifting of the burden of proof in cases of this sort is a critical factor. Sustaining a burden to prove a negative fact (i. e., absence of undue influence) is always difficult. Here, if the burden of proof shifts, the beneficiary of a will is not simply required to prove a positive fact or event, but to show, in a real sense, something which virtually no positive fact bears out. In short, a beneficiary who is in a confidential relationship with a person whose intellect is weak would seldom be in a position to sustain anything like the burden of proof which this rule imposes upon him.

Implicit in the rulings of the Supreme Court is the requirement that the beneficiary shall have exerted some force or have taken some action so that the resulting testamentary disposition is the result of his misconduct and was brought about by him, and that he would not have been the beneficiary other than for his own improper conduct. The characterization of the offense as "undue" influence necessarily implies this. Further, in *Clark Est.,* supra, the Su-

preme Court specifically said '. . . Generally, undue influence, being somewhat akin to fraud, must be proved by clear and convincing evidence . . .' Fraud, however, requires an affirmative misrepresentation. Cf. *Borelli v. Barthel,* 205 Pa.Super.Ct. 442 [211 A.2d 11]. One does not commit fraud by simply accepting benefits conferred upon him by another. We will now consider the evidence produced by contestant and then address ourselves to the issue of proponent's conduct.

There is little question that Marian Honsaker receives the bulk of this estate, and there can be even less question that she receives substantial benefits, which appears now to be established criterion for this aspect of the rule. *Fickert Est.,* supra. Evidence of the alleged weakened intellect of the testatrix is a little less conclusive, but testatrix had heart and circulatory problems and physicians at the hearing testified that her mental condition was confused and at times that she was unaware of what was going on about her. She suffered from a cerebral insufficiency of blood, which causes this slackening of the mental processes, sometimes called organic brain syndrome. This ailment also affects the emotions of the patient, and testatrix was often despondent and morose. Contestant in this matter, testatrix's son, is an ophthalmologist and a medical doctor and testified to some of the above matters. Testatrix depended upon him for many years to take care of her business affairs, but toward the end of her life, came to rely more and more upon proponent.

On the other hand, it is clearly established that a weakened intellect is not the same as a lack of testamentary capacity. *Clark Est.,* supra. Considering the decline in testatrix's general physical condition, her variations in mood and alertness are not surprising. Although there was evidence that testatrix would have understood legal documents, and was in a declining mental state, the testimony of the subscribing witnesses clearly indicates that when the will was executed Mrs. Reichel fully understood what she was doing and stated that she had thought about the matter for

some time. The will contains an express statement that the testatrix was aware that she was not dealing equally with her two children, and explained that her daughter was in far greater need of material assistance than her son. There is no evidence controverting the testimony of the subscribing witnesses regarding the testatrix's condition at the time the will was executed. However, under the rule in *Masciantonio Will,* 392 Pa. 362 [141 A.2d 362] we must ascribe significant weight to the medical testimony, and we therefore conclude that the testatrix had a weakened intellect at the time the will was executed, at which time she was 87 years of age. We reaffirm that this does not imply a lack of testamentary capacity when the will was executed, and indeed we would be loath to make such a finding if it were the precise issue before the Court.

With respect to the element of confidential relationship, it has been held that the parent-child relationship alone is not sufficient *per se* to establish that relationship. *Ries v. Ries's Est.,* 322 Pa. 211 [185 A. 288]. Although such a relationship may exist oftener between relatives than otherwise, our Courts have always regarded the closeness of family relationship as at least as good a reason for the transfer as it is to suspect it. However, there is more than mere relationship in this case.

Proponent held a power of attorney over the testatrix's checking account. Sometime in 1974, proponent took over the entire operation of the checking account, which had therefore been done partly by contestant and partly by testatrix. In this capacity, proponent controlled some $34,-000 worth of deposits in 1974, and this strongly indicates to this Court that a confidential relationship exists between the parties, though in no way do we suggest that it was not justifiably reposed in proponent. See *Foster v. Schmitt,* 429 Pa. 102, 108 [239 A.2d 471]. Proponent also went to the mother's safe deposit box with her, and it also appears that the proponent was not as open with her brother as he had been with her with respect to the testamentary changes which were being made, though no reason is given for this.

Contestant argues that proponent must suffer ". . . every inference which may be fairly made against her to the means she used to gain her mother's assent to the March 8, 1974 execution (of the will)." But even if this is so, however, the existence of a confidential relationship has never, to our knowledge been held to prove automatically that it has been abused, and while we think that unquestionably a confidential relationship existed here between mother and daughter, we come now to the nub of this matter, which in point of fact distinguishes it from many other cases involving the same general legal issues.

At the conclusion of the hearing, this Court was constrained to point out that although, and assuming that, the three requirements of *Clark,* supra, were met, there was a *dearth of evidence of any misconduct* on the part of proponent. Her mother's weakened intellect was not her fault; having a confidential relationship with another does not prove abuse of that relationship; nor is the receipt of the bulk of the estate, especially where the testatrix states affirmatively a valid reason for this, an indication of improper conduct. Only some affirmative evidence of undue influence should put upon the recipient (proponent here) of the testator's bounty a burden of proof as onerous as showing the lack of undue influence. As we said at the hearing, and still believe, 'There has to be some overreaching, because a person who is the natural object of a person's bounty, a daughter, gets more than a son, doesn't prima facie say she exerted undue influence.' The analogy between fraud and undue influence, embodied in the language of the Supreme Court noted previously, guides us here. Since fraud requires deliberate and affirmative misconduct, we think that no presumption of undue influence can attach to the receipt of a testamentary gift from a testator of some weakened mind (but not shown to lack testamentary capacity) by one who bears a confidential relationship, especially where the gift is a natural and likely exhibition of the testator's bounty.

It is important to note that we are not dealing here specifically with the 'stranger-to-the blood' requirement

which was disposed of in *Clark.* We wholly agree that drawing a line which puts all blood relatives on one side and all strangers to the blood on the other is illogical. However, the extensive review of the law which comprises most of the *Clark* opinion was at no point required to address itself in that case to whether or not the beneficiary of the will had been instrumental in procuring it. We believe that *Clark* on its facts, and the cases therein cited (viz., *Yorke's Est.,* 185 Pa. 61 [39 A. 1119]) all involved actual influence, by the beneficiary, and the only real question was whether the influence was undue, and who had the burden of proof to show whether or not it was undue. For example, whether or not a person received a substantial benefit under the will would be totally disconnected logically from whether or not there was undue influence, unless implicit in this characteristic is that the recipient had done something improper to obtain his benefits. In *Clark,* as a matter of fact, the proponent wrote the will, had it typed and was the only person present when it was executed. Our Supreme Court has said, ' . . . that proponent is the scrivener indeed weighs heavily against him.' Likewise, in the majority of cases dealing with this problem in the past, the proponents have in fact been of the same blood as testator; hence the practical uselessness of this standard. *Aggas v. Munnell,* 302 Pa. 78 [152 A. 840].

We have examined and reexamined this record in an attempt to discover some cogent basis for holding that proponent procured the making of this will improperly. All we have found is facts which bear out the statement of the testatrix that proponent is in greater need of financial assistance than is her brother. This has no part in our decision. However, we have looked in vain for some evidence that would warrant us in concluding that the daughter, and not testatrix, was the real designer and author of the will, and there is no such evidence."

The court en banc stated:

"The remaining exceptions except to the Court's refusal of contestant's motion for non-suit, the Court's granting of

proponent's motion for non-suit, and the Court's failure to shift the burden of proof to the proponent to show an absence of undue influence.

Contestant argues that when he established (1) weakened intellect in the decedent plus (2) a confidential relationship between the decedent and the proponent plus (3) a substantial benefit to the proponent under the will, thereupon— without further proof by the contestant—the burden shifted to the proponent to prove absence of undue influence. Contestant argues that these are the three express conditions for shifting the burden to proponent under *Clark Estate,* 461 Pa. 52, 334 A.2d 628.

This Court has previously indicated that it is implicit in *Clark Estate* that the proponent's conduct must have contributed *causally* to the testamentary disposition complained of in order to shift the burden of producing evidence back to the proponent. *Dunlap Will,* 25 Fiduc.Rep. 529. In *Dunlap,* this Court opined as follows:

'. . . It should be implicit that a beneficiary charged with undue influence must be shown to have profited by his own misconduct, *in a causal sense;* it is clear that if a charge of undue influence is to be predicated upon the three factors herein above referred to, it should be part of the contestant's case that such factors, taken together were the cause or reason for the disposition in question. Unless this additional condition is written into the 'more recent' rule, we may well soon be confronted by a case where one in a confidential relationship receives substantial benefits under the will of a person of weakened intellect without having done anything positive to induce the situation, which is. precisely the case here, as will be seen; and yet, as the rule is now simply stated, a presumption of the invalidity of the will would nonetheless arise. In other words, all three of the stated conditions could readily exist without the slightest improper conduct on the beneficiary's part. This issue was covered fairly effectively by the 'older rule' which required the beneficiary to have 'been instrumental' in having the will written, and it is our view that the contestant still bears the burden to show that the beneficiary's conduct

contributed to the testamentary disposition causally, in order to shift the burden of producing evidence back to the proponent.' Id. at 535.

The need for a causal connection between the proponent's conduct and the testamentary disposition complained of may be found in *Clark Estate* in the following language of Mr. Justice Roberts, in a concurring opinion joined by three other justices:

'. . . The presumption (of undue influence) is merely a means by which a contestant can establish undue influence circumstantially *by proving opportunity for the exertion of undue influence* and the possible fruits thereof. . . .' (Emphasis added) *Clark Estate,* supra, 461 Pa. at 67–68 [334 A.2d] at 635–6.

Mr. Justice Roberts then added that such proof must be by clear and convincing evidence.

In *Clark Estate,* the Supreme Court stated the rule of law that where (1) a person in a confidential relationship (2) receives the bulk of the testator's property (3) from a testator of weakened intellect, the burden of proof is upon the person occupying the confidential relation to prove affirmatively the absence of undue influence. Id., 461 Pa. at 59–60 [334 A.2d] at 632. The Supreme Court then cited, as support for that rule, cases which demonstrate the need for a causal connection between the proponent's conduct and the testamentary disposition complained of.

In *Cuthbertson Appeal,* 97 Pa. 163, for example, the will provided for a gift to the scrivener of the residue of the estate, which totalled approximately $300,000.

And in *Button Estate,* 459 Pa. 234, 328 A.2d 480, the improper conduct of the proponents of the will was in holding the decedent physically and mentally captive from the date he executed the purported will to the date of his death.

And in *Fickert Estate,* 461 Pa. 653, 337 A.2d 592, in which the Supreme Court reiterated the rule of *Clark Estate,* the proponent was again instrumental in procuring the execution of the will.

628

Contestant in the matter before the Court has failed to prove by clear and convincing evidence any causal connection between the conduct of the proponent and the testamentary disposition complained of. Contestant has failed to establish undue influence circumstantially by proving opportunity for the exertion of undue influence. In fact, the evidence is to the contrary, for the attorney-scrivener, on the basis of his many communications with decedent, expressly stated that decedent's decisions were all hers and had been given to him by decedent and not through her daughter. The testimony of the attorney-scrivener and the subscribing witnesses establishes that decedent made the decisions with regard to the disposition of her estate under conditions unaffected by outside influence or control. The testimony of Marian Honsaker, the daughter of the decedent who benefitted from the change in the will, clearly and convincingly reveals that she did not wish to discuss the terms of the will with the decedent and that she was not present at the signing of the will."

A reading of the above opinions leaves no doubt that the evidence accepted by the trial court established no undue influence.

The decree of the trial court should be affirmed.