J-A06010-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ESTATE OF GEORGE MARKO, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: BARBARA DORENBURG AND RONALD SOBOLEWSKI | No. 295 WDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): 3591 OF 2014

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MAY 01, 2018

Barbara Dorenburg and Ronald Sobolewski (Contestants) appeal from the order, entered on January 19, 2017, that dismissed their appeal from the probate of George Marko's (Decedent) will, determining that Contestants failed to establish that Decedent lacked testamentary capacity and that his will was procured through undue influence exerted by Eileen Carmody (Proponent). We affirm.

Decedent died on May 29, 2014, at the age of 93. He was the last surviving member of his immediate family. Contestants are Decedent's niece and nephew. Proponent is Decedent's niece and the sister of Contestants. Contestants assert that Decedent's will executed on April 22, 2002, should control, while Proponent contends that the will executed on May 21, 2014, should control. The 2002 will leaves Decedent's estate equally to Proponent,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Contestants, and to Decedent's brother and his sister. The 2014 will assigned Decedent's estate in its entirety to Proponent.

On June 17, 2014, the 2014 will was admitted to probate and Proponent was granted letters testamentary. On November 25, 2014, Contestants filed a petition challenging the 2014 will's admission to probate based upon their assertion that the 2014 will was a product of undue influence and that Decedent lacked testamentary capacity. The trial in this matter was held on April 19-20, 2016, and resulted in the order presently on appeal.

In its opinion, the orphans' court noted that "Decedent relied fully on [] Proponent for conducting his business affairs," and that "there were many witnesses on behalf of [] Proponent testifying to [] Decedent's alertness and cognitive function." Orphans' Court Opinion (OCO), 7/17/17, at 2. The court also stated that

> [t]here is evidence that at the time of the signing of the 2014 will, [] Decedent was of sound mind. The two witnesses to the signing of the [w]ill, Geraldine [Ryan] and Jacqueline Baird, both testified to [] Decedent's mental capacity, stating that the 2014 [w]ill was read to [] Decedent, [] Decedent signed the will, and that [] Decedent stated that he wanted "my Eileen to have everything because she has done so much for me."

Id. (quoting Geraldine Ryan's deposition testimony, 5/21/15, at 17). The court further noted that

> [a]lthough there is evidence that [] Decedent suffered from delirium or dementia, Dr. Chow, the physician that saw [] Decedent on the day the 2014 [w]ill was signed, testified that the states of delirium "waxes and wanes, comes and goes," [(Trial Transcript, 4/19/16, at 35)] and [] Decedent at the time of the signing of the 2014 [w]ill was not administered any medication

that could have impaired his cognitive function [(Trial Transcript at 53)].

Id. at 3. Following the entry of the orphans' court's January 19, 2017 order and the denial of Contestants' motion for reconsideration, Contestants filed their appeal to this Court.

On appeal, Contestants raise the following issues:

I.      Whether the trial court abused its discretion by failing to find sufficient evidence of undue influence and shift the burden of proof to Proponent to disprove undue influence?

II.     Whether Proponent failed to disprove undue influence by clear and convincing evidence?

Contestants' brief at 5.

Our scope and standard of review applied to an appeal from a decree of the orphans' court adjudicating an appeal from probate is as follows:

> In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to the appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion.

In re Estate of Tyler, 80 A.3d 797, 802 (Pa. Super. 2013) (en banc) (citing Estate of Reichel, 400 A.2d 1268, 1269-70 (Pa. 1979)). An appellate court will set aside the orphans' court's factual conclusions only if they are not supported by adequate evidence. In re Bosley, 26 A.3d 1104, 1107 (Pa. Super. 2011). This Court exercises plenary review over the orphans' court's legal conclusions drawn from the facts. In re Mampe, 932 A.2d 954, 959 (Pa. Super. 2007).

The applicable burden of proof in a case in which the contestant of a will asserts the existence of undue influence is as follows:

> "The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof." In re Estate of Clark, 334 A.2d 628, 632 (Pa. 1975). Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant. Id. The contestant must then establish, by clear and convincing evidence, a prima facie showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the proponent receives a substantial benefit from the will in question. Id. Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence. Id.

In re Estate of Smaling, 80 A.3d 485, 493 (Pa. Super. 2013) (en banc) (footnote omitted, emphasis added). "As our Supreme Court has held, a testator may be of sufficient testamentary capacity to make a will but still may be subjected to the undue influence of another in the making of that will." Mampe, 932 A.2d at 959 (citing In re Estate of Fritts, 906 A.2d 601, 606-07 (Pa. Super. 2006) (other citations omitted)).

This Court in Fritts sets forth the definition of undue influence as follows:

> [U]ndue influence is a subtle, intangible and illusive thing, generally accomplished by a gradual, progressive inculcation of a receptive mind. Consequently, its manifestation may not appear until

> long after the weakened intellect has been played upon.
>
> Owens [v. Mazzei, 847 A.2d 700,] 706 [(Pa. Super. 2004)] (quoting In re Estate of Clark, 461 Pa. 52, 334 A.2d 628, 634 (Pa. 1975)) (internal quotations and citation omitted). Our Court has stated:
>
> > Conduct constituting influence must consist of "imprisonment of the body or mind, or fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will."
>
> [In re Estate of] Luongo, [823 A.2d 942,] 964 [(Pa. Super. 2003)] (quoting [In re Estate of] Angle, [777 A.2d 114,] 123 [(Pa. Super. 2001)] (emphasis in original).

Fritts, 906 A.2d at 607.

"Although our cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation." Smaling, 80 A.3d at 498 (quoting Fritts, 906 A.2d at 607).

> Finally, a confidential relationship exists when the circumstances make it certain that the parties did not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed. A confidential relationship is created between two persons when it is established that one occupies a superior position over the other — intellectually, physically, governmentally, or morally — with the opportunity to use that superiority to the other's disadvantage. [S]uch a relationship is not confined to a particular association of parties, but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest.

Id. (omitting quotation marks and citations).

Contestants first argue that they established that Decedent suffered from a weakened intellect, basing this on the expert testimony of Bruce Wright, M.D., a board certified physician, who specializes in adult psychiatry. Although Dr. Wright never met with Decedent, he reviewed medical records dating back to 2007 that noted Decedent's history of dementia, delirium, depression and pulmonary problems. In the course of his deposition, Dr. Wright stated:

> A. Dementia is an impairment in cognitive functioning as compared to a previous level of functioning.
>
> Q. Okay. And how did it affect Mr. Marko in particular? How did his dementia or cognitive impairment in your opinion affect his cognitive abilities?
>
> A. Well, as documented in the medical records, he had cognitive impairment that affected his ability to take care of basic activities of daily living, bathing, maintaining hygiene, affected his ability to manage instrumental activities of daily living, including money management. It affected his ability to provide historical information. There are numerous references that he was a poor historian because of his cognitive impairment. It affected his opinion to make informed decisions.
>
> . . .
>
> Q. Were you able to form an opinion whether or not Mr. Marko was capable or had the mental capacity to comprehend a [w]ill signing of May 21 of 2014?
>
> A. Based on the medical records description of his mental state at the time that the [w]ill was signed and immediately prior to that, it's my opinion he did not have the capacity to make informed decisions in that respect.

Dr. Wright's Deposition, 1/4/16, at 29, 31.

Contestants also identify various medical records that document Decedent's stays at UPMC Presbyterian-Shadyside Hospital, Rebecca at Concordia Place, and Forbes Hospice during April and May of 2014, the two months that preceded his death on May 29, 2014. These records describe Decedent as lethargic, restless, delirious, anxious, and agitated. Forbes Hospice Inpatient Unit Nursing Notes, 5/21/14 (R.R. 610a). Contestants also cite the testimony of Elizabeth Chow, M.D., given at trial concerning her examination of Decedent on May 21, 2014, the day he signed the 2014 will. She indicated that she asked Decedent questions, but either received no answer or an unintelligible response. N.T., 4/19/16, at 38.

Contrary to this evidence, which Contestants claim show Decedent's weakened intellect, the orphans' court relied on the testimony of two nurses, finding that "Decedent could in fact understand, converse, and make appropriate responses to whomever he was speaking with." OCO at 4. Moreover, Contestants claim that the court "misconstrue[d] the appropriate standard for weakened intellect." Contestants' brief at 27. With reliance on Owens v. Mazzei, 847 A.2d 700, 707 (Pa. Super. 2004), they contend that "[w]eakened intellect is not defined by an ability to converse or respond appropriately. Rather, weakened intellect is defined by frequent confusion[,] disorientation, and forgetfulness." Id. Thus, Contestants claim that the evidence they presented showed "a long history of cognitive impairment, with

a rapid increase in confusion, disorientation, and forgetfulness in the month prior to the signing of the 2014 [w]ill." Id. at 28.

However, Contestants overlook the fact that the orphans' court's "mandate in assessing such evidence is relatively broad." Owens, 847 A.2d at 707.

> If the court's decision rests upon legally competent and sufficient evidence, we will not revisit its conclusions. Under no circumstance will we substitute our judgment of credibility for that of the Orphans' Court.

Id. (citing In re Estate of Clark, 334 A.2d 628, 635 (Pa. 1975)). Thus, we are compelled to accept the trial court's conclusion, relating to the question of Decedent's weakened intellect, in that it is supported by sufficient, competent evidence.

Next Contestants center their argument on their allegation that a confidential relationship was present based upon Proponent's conducting Decedent's business affairs and acting as his power of attorney. At trial, Contestants called Proponent as on cross-examination, eliciting information about her fulfilling her duties relating to both a financial power of attorney and a healthcare power of attorney for Decedent. Proponent testified that she arranged all of Decedent's doctor appointments, accompanied him to all of these appointments and, upon admission to a medical facility, she interacted with staff, relating the information to Decedent. In managing Decedent's financial affairs, Proponent received all of Decedent's mail at her home. After discussion with Decedent, Proponent would write and sign checks to pay his

bills, and arranged for her son to prepare and file Decedent's tax returns. Proponent also requested that her attorney, George P. Geyer, Jr., Esq., draft the 2014 will during the weeks Decedent was hospitalized preceding his death. Attorney Geyer never met with Decedent and was informed by Proponent that she was to be the only beneficiary. Based upon this evidence, Contestants claim that they established that a confidential relationship existed between Proponent and Decedent and that the court erred in failing to consider Proponent's control over both Decedent's medical treatment and his financial affairs. Thus, Contestants argue that the court should have found that a confidential relationship existed, which was enough to shift the burden to Proponent.

With regard to Proponent's burden, Contestants identify the various witnesses Proponent called to testify, namely, several nurses and Proponent's husband, who they claim did not see Decedent in the month prior to his signing of his will. As for the two witnesses to the signing of Decedent's will, Contestants assert that they spent no more than ten minutes with Decedent at the signing. In other words, Contestants argue that Proponent's witnesses failed to rebut the presumption of undue influence.

Unfortunately for Contestants, we are compelled to affirm the orphans' court's decision. Although not so stated, the argument presented by Contestants is solely based on credibility determinations rendered by the court. Our review of the record reveals that the court's findings are based

upon sufficient, competent evidence and, as such, our scope and standard of review does not permit us to set aside the orphans' court decision. We therefore affirm the decision dismissing their appeal from the probate of Decedent's will.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/2018